Case 4:22-cr-00213   Document 1   Filed on 04/29/22 in TXSD   Page 1 of 6

United States Courts
Southern District of Texas
FILED
*April 29, 2022*
Nathan Ochsner, Clerk of Court

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | 4:22-cr-213 |
| v. | § § | CRIMINAL NO. |
| | § | Related Case: 4:22-CR-33 |
| SCOTT ADAM KAVENY | § § § | |

### CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment:

1.  Home Point Financial Corporation was a mortgage lending business.

2.  Defendant SCOTT ADAM KAVENY (KAVENY) was a resident of the greater Salt Lake City area in Utah.

### COUNT 1
**Conspiracy to Make False Statements and Writings**
**(18 U.S.C. § 371)**

3.  The factual allegations set forth above in Paragraphs 1 and 2 are incorporated as if fully set forth in Count 1 of this Information.

4.  From in or around September 2019 through in or around February 2022, within the Southern District of Texas and elsewhere, defendant

**SCOTT ADAM KAVENY**

did knowingly and willfully combine, conspire, confederate, and agree with one or more persons known and unknown to commit certain offenses against the United States, namely: (1) to knowingly and willfully make false statements in loan applications for the purpose of influencing

mortgage lending businesses and financial institutions, in violation of 18 U.S.C. § 1014 (false statement to mortgage lending businesses and financial institutions) and (2) to willfully and knowingly make and use false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries in a matter within the jurisdiction of the executive branch of the Government of the United States, by submitting reports falsely claiming identity theft to the Federal Trade Commission for debts incurred, well knowing and believing that the debts were in fact incurred, in violation of 18 U.S.C. § 1001(a)(3) (false writing to a government agency).

## PURPOSE OF THE CONSPIRACY

5. KAVENY utilized the services of co-conspirators using various entity names such as Jeff Funding. Jeff Funding purported to operate a business that offered credit repair and services to obtain "funding" or unsecured personal loans. It was a purpose of the conspiracy for individuals operating and working at Jeff Funding to unlawfully enrich themselves by recruiting credit repair clients like KAVENY to fraudulently "clean" the client's credit history so that the clients could fraudulently obtain various loans, including mortgages.

6. After a client received a loan or a mortgage, Jeff Funding claimed a percentage of the loan proceeds, as a fee or a commission. Jeff Funding also obtained loans for its employees and operators and others involved in the conspiracy and used the funds for its operating costs and personal expenses.

## MANNER AND MEANS OF THE CONSPIRACY

7. Jeff Funding and its co-conspirators recruited clients from across the United States, promising to obtain "funding," or loans for clients after "cleaning" the clients' credit histories.

8. Jeff Funding and its co-conspirators did so by blocking debts, late payments, and

bankruptcies listed on a client's credit report by making a false report, under penalty of perjury, to the Federal Trade Commission (FTC) and claiming that the listed debts, late payments, and bankruptcies were due to identity theft.

9. After filing the identity theft report with the FTC, Jeff Funding and its co-conspirators sent the FTC identity theft report and other documents to the credit bureaus, demanding that the debts be removed from the client's credit report. Jeff Funding removed bankruptcies from the client's credit report, although the client, such as KAVENY, and Jeff Funding both knew that the bankruptcies were accurately reported. As a result of claiming identity theft, the client's credit score would generally improve.

10. After a client's credit score improved, Jeff Funding offered to obtain unsecured personal loans and credit cards, among other "funding," on behalf of the client. Sometimes, Jeff Funding instructed clients to directly apply for loans by claiming a false income and making other false statements.

11. Other times, Jeff Funding directly submitted loan and credit applications on behalf of the clients. Jeff Funding and its co-conspirators facilitated these loans by including false statements in the loan applications, which were then submitted to the lenders. The false qualifying loan and credit information included employment, employment verification, intended purpose of the loan proceeds, income, assets, and fake bank account statements. Jeff Funding and its co-conspirators set up fake companies and websites to make it appear as if its clients were legitimately employed at these companies. Jeff Funding and its co-conspirators, however, controlled the contact information for the fake companies and using aliases, verified employment information for the clients and other co-conspirators.

12. When a lender called a loan applicant with questions, the Jeff Funding Defendants

either coached the client as to the answers or pretended to be the client and gave false answers.

13. Jeff Funding and its co-conspirators also offered to fraudulently boost a client's credit score by obtaining a mortgage in the client's name and using the client as a straw buyer of the residential property, although the client did not intend to reside at the property or pay the mortgage.

## OVERT ACTS

14. In furtherance of the conspiracy and to achieve the purpose and objects thereof, KAVENY, and his co-conspirators, including individuals at Jeff Funding committed at least one of the following overt acts, among others:

15. Jeff Funding created and revised guidelines for the conspiracy and for their clients. In a document titled "Instructions for Credit Compliance" dated February 3, 2019, Instruction No. 7 stated "[i]f a creditor contacts the Client for any reason, the Client MUST indicate that they have no idea or do not know why they are being called. It is imperative Client in no way acknowledges any past debt to any creditor during this process." Jeff Funding requested that KAVENY sign and return this document to Jeff Funding and KAVENY did on or about September 9, 2019.

16. Jeff Funding also created guidelines titled Instructions for Personal Funding dated February 3, 2019. In this document, Instruction No. 13 stated "[c]lient must ALWAYS state they themselves submitted the application." Jeff Funding requested that KAVENY sign and return this document to Jeff Funding and Kaveny did on or about September 9, 2019.

17. On or about June 17, 2020, an indicted co-defendant in a related case made the down payment and closing costs on 2514 Bycreek Drive, Houston, Texas, in the name of KAVENY. MUNOZ then resided at the property and made the mortgage payments, all in violation of 18 U.S.C. § 371.

## COUNT 2
### False Statement to a Mortgage Lending Business
### (18 U.S.C. § 1014)

18. On or about June 17, 2020, within the Southern District of Texas and elsewhere, the defendant

### SCOTT ADAM KAVENY

knowingly and willfully made a false statement and report for the purpose of influencing the actions of Home Point Financial Corporation, a mortgage lending business, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the property at 2514 Bycreek Drive, Houston, Texas, that is, false statements concerning the borrower's qualifications, including but not limited to the borrower's primary residence status, in violation of 18 U.S.C. §§ 1014 and 2.

### NOTICE OF FORFEITURE
### 28 U.S.C. § 2461(c); 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(2)

Pursuant to 18 U.S.C. § 982(a)(2), 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), the United States gives notice to defendant

### SCOTT ADAM KAVENY

that upon conviction for making a false statement to mortgage lending businesses and financial institutions and for committing wire fraud and for conspiracy to do so, in violation of 18 U.S.C. §§ 371 or 1014, the United States will seek the forfeiture of any property constituting or derived from proceeds obtained, directly or indirectly, as the result of such violations.

**Money Judgment and Substitute Assets**

The United States will seek the imposition of a money judgment against the defendant. In the event that one or more conditions listed in 21 U.S.C. § 853(p) exists, the United States will seek to forfeit any other property of the defendants in substitution, up to the amount of the money judgment against that defendant.

JENNIFER B. LOWERY
United States Attorney

By: _____
EUN KATE SUH
JAY HILEMAN
Assistant United States Attorneys